Mr. Griffin, good morning. Good morning, Your Honor. My name is Thomas Griffin. I represent the petitioner, Mr. Makwana, and I'd like to reserve five minutes for rebuttal time. Are you pro bono counsel? No, I'm not. Up until this point, he was representing himself. Has he been removed? He's still serving time in federal prison. But he will be removed. He will be removed. I can't see a way that he wouldn't be removed eventually. You don't even contest that. You don't contest that. I don't contest removability. I contest the grounds of removability. You don't contest the removability as such that he will be removed. Yes, Your Honor. He has no legitimate basis to be here at this point. That's correct, Your Honor. You essentially conceded those two charges that don't deal with this. Yes. And the reason for contesting the crime involving moral turpitude grounds is it precluded him from getting voluntary departure. So I guess he's not necessarily going to be removed. It's a technicality. But he could have been granted voluntary departure, which is not removal. And with removal come handicaps. One of them is you'd have to file a special waiver to come back based on the removal alone. The other is a crime involving moral – being removed for a crime involving moral turpitude creates a lifetime inadmissibility for him because – I think there's some – whether it's lifetime or whether there's a 10-year – I think there's a lot of questions. Sure. Yeah. But there's a question. Yeah. The 10-year inadmissibility is for being – for overstaying by more than a year. Anyone who leaves the country after having overstayed by that time has a 10-year bar. But anyone who has a crime involving moral turpitude will always face that bar coming back. The bar is waivable, and that's true. But whether he could get it waived or not, it creates an extra handicap, an extra obstacle to ever coming back. All right. So how do we look at this case? I think this is a fairly easy one. Easy? Yeah, for this court. That's good to hear. This court repeatedly in Singh, Jean-Louis, Barone, Rojas most recently has, in a sense, scolded the Board of Immigration Appeals and guided them and said this is how you do categorical analysis. And categorical analysis applies when you're looking for crimes involving moral turpitude. And the recipe is super simple. If it's a – if it's not a divisible statute, you go straight categorical. If it is divisible, you're allowed – and only as a tool to get to the categorical analysis – you're allowed to look at the record of conviction. Then by looking at it, if it reveals which subsection of the statute was violated, you come back up to the categorical analysis and finish. But the BIA, as you know, concluded that this statute is divisible. It – exactly. That was the biggest mistake it made and the most obvious one. This was a super precise conviction, and it was right in the records. It's 18 U.S.C. 1030 sub-A, sub-5, sub-capital A, sub-I. 1030 – Nothing divisible. 1030 itself – 1030 itself is divisible. The section, the particular section, 5 and 6, are not divisible. And isn't there a question as to what the BIA really looked at here? I definitely do not – I definitely must disagree that – that 1030 was what was being looked at, because it got handed to it a precise subsection. And the common one that we – that this Court sees a lot is the Pennsylvania statute for possession with intent to distribute drugs, and that Moncrief handled that well. The Supreme Court with an identical statute. It has different, you know, commas, and there's some things within the statute that are morally turpitudinous and some things that are not. Right. This – and that's what Jean-Louis says. You can call it, you know – That's why the statute as a whole is divisible. If you look at the section – Not the statute of conviction is not divisible. No, I know that. But I see that as two different things. The statute – the conviction is a subsection of 1030. If you just look at the subsection, I would say it's not divisible. He was convicted of a precise subsection of 1030. What was he convicted of? I mean, do you want to take the absurd – and, I mean, Title 18 is divisible. But what was he – But that doesn't mean anything. Wasn't he convicted of intentionally causing damage to a professional – to a protected computer without authorization? Yes, Your Honor. And the – he was also convicted of a loss aggregating at least $5,000 in value. You couldn't have got convicted unless there was a – he met $5,000. Okay. So he intentionally – I'm not dividing. I'm not – I'm just looking at what he was convicted of. So he was convicted of intentionally causing damage without authorization and aggravating at least $5,000 to a protected computer, which is a computer used by the financial institution or the government for the conduct of its business. Why wouldn't that be morally – Well, certainly on the surface, it seems like it may be morally – and I would add the protected computers as any computer – I think is my computer when I buy something on Amazon. So I think the protected computer means it's protected by this statute and really nothing more. But – Well, no, a protected computer is defined in the statute. I don't know which computers are excluded in that. So what he did was he intentionally damaged a government computer – I'm just looking at what he was convicted of – of – did at least $5,000 in damage. Wouldn't that be a crime of moral turpitude? I'd say obviously no. I think the best – the statute is full of buzzwords, protected and damaged and intentional. It refers to government or a financial institution. Or any computer used for interstate and foreign commerce. Interstate, okay. That could be just any computer. That's my argument. It's any computer. Can I get you back over for a moment? Because there is a question I want to ask you. Let's suppose I am with you with regard to this section under which he was convicted as being indivisible. The next inquiry, as I understand it, is what is the least offense that could be committed under the words of the statute and whether that would be turpitudinous or not. Right. Thank you. I gave a couple of hypothetical examples. I don't know if Your Honor remembers them. They're terrific hypotheticals. Thank you. But I think in what Judge Greenberg brought up, when you read it, when you hear it, and I think it rung in the ears of the immigration judge and the BIA, this just sounds – there's something morally turpitudinous. But if you read the words and the definitions, damage just means an impairment to the integrity or availability of data or information. That's true. Maybe you can go into your hypotheticals. But for a moment, this statute, the purpose of the statute, it seems to me, is to protect against the viruses that are often done on computers. You can – I'm sure this was written to – Time bombs and viruses. Yeah. I mean, I think because of the state of we are in society now and computers and threats and the NSA, that this is – there's a lot of buzzwords here that makes it seem like we're under attack and Mr. Maguana was putting us under attack. But there's other subsections. There are seven subsections under 1030. And they specifically address something that triggers that – a despicable act, something that shocks the conscience, something that's base, vile, and contrary to the norms of society. And those are the traditional words. It's this court, and the BIA, is always used to describe something that hits your gut when it happens. It's something that makes you think that it's malum in se, not malum prohibitum. It's a thing that if we didn't have written laws, there'd be a gut reaction that this guy's got to be kicked out of our society. Well, that brings it back to what the BIA based its decision on, because if I understand you correctly, the statute is indivisible, and that limits what you can look at to determine whether this is turpitude or truth. Exactly. Well, I mean, if you want to say that they – What is it that you can look at? You can only look at the words of the statute. Why can't I look at the indictment? Because the words of the statute are clear, and they don't invite any kind of inquiry to decide which section it was. Now, the BIA, you could remand to the BIA and say, well, okay, we'll say it was divisible, and what would make it divisible, I guess, are if you wanted to push it, but they didn't, is it could have been a program information code. I'm saying I'm with you. Supposing I'm with you on this statute being indivisible, what is the approach? Does the statute, when you read it, trigger the sense that there's something morally turpitudinous about it, or was it benign, or is it morally neutral? And, of course, my argument is morally neutral. I mean, there's nothing specific. How can it be morally neutral? He says not to injure somebody. It doesn't say anything about injuring. And that's the thing. The damage that's talked about here is an impairment, quote, unquote, to the availability of information or to the impairment to the... What's the exact words of the indictment? What do they say? The words of the indictment are pretty... Let me just see. I have a picture. I'm sorry. Let me just... I did actually thought that your argument was you can't look at the indictment. You can't look at the indictment. You can't look at the underlying... I mean, the Singh case says that. The Rojas case just said that. The DeCant case just said that. Those are considered parts of the record of conviction, which are used only to help you get to the categorical approach. I'm peeking behind the curtain and looking at the indictment. I'm really sorry. Well, he was convicted of what's in the indictment. We have to know what's in the indictment. No, you don't have to know what's in the indictment. The indictment's considered the record of conviction. He was convicted of a statute. And the way the district attorney or the assistant U.S. attorney wrote it with his buzzwords doesn't matter. And the reason we do that and DeCant says that clearly is in the 50 jurisdiction or 51 jurisdictions in this country. You've got to treat everybody fairly when you're reviewing the facts or you're reviewing a conviction, and that's a very well-defined term, for a case where you didn't sit in the trial. Did you reserve time for rebuttal? I did. But if it's not... We don't look at the indictment if we accept your argument, correct? You don't look at the argument? The indictment. We don't look at the indictment if we accept your argument. No, indictments... You don't look at the indictment? We would apply the categorical approach. You always apply the categorical approach, and you get to look at the indictment. And DeCant is super clear on this. You get to look at the indictment. By reading the statute, you don't see which section it was. If by reading the statute, you don't see. So that's the precise point. If by reading 1030A5AI, you don't know whether it was code, command, program, then go look under and then see what it was. Oh, it was a code. Oh, it was a program. But the board doesn't do that. Your argument, though, is that we don't have to get to the indictment because this is not divisible. Exactly. So that we apply the categorical approach. If it were divisible, we'd have to go to the modified categorical, and that's when you would look at the indictment. To help you get back to the categorical and pick which of the divisible parts it was. That's right. But that's not what happened. And the board goes overboard. As soon as they see this, they say it's divisible, but they don't define divisibility. They don't say because some are CMTs and some aren't, so let's look under and figure out which one it is. What is the remedy that you seek here? I think in the first instance, an easy one, is just to send it back to the board and say, could you please apply the categorical analysis? Don't include that he worked for Fannie Mae, that he could have caused a societal disaster. Can we do that, or do we have to send this case back to the BIA for that? Your argument is that the statute is indivisible. Do we have to send it to the BIA to do that? I think that's the easy way. I would ask for more. I would ask that the court examine the statute word for word and the definitions and not use the superficial buzzwords of damaged and protected computer and rule that this subsection of 1030, A5AI, is never a morally turpitudinous act. It does not ring. It does not have vile baseness, corrupt mind reflected in it. Maybe you can focus on that when you come back on your rebuttal, why we should make that decision. We'll hear the other side. Thank you. Mr. Martz-Teller? Is it divisible or is it indivisible? May it please the court, Eric Martz-Teller for the Attorney General. We think the board properly found that the entire statute, 18 U.S.C. Section 1030, is divisible. He wasn't convicted of the entire statute. Right. So then looking at the subsection A5A1, we think under the board's analysis, they analyzed it as if that subsection was not divisible. They looked to whether the least culpable conduct. Wait a minute. Now, they specifically said this is divisible. Didn't the board say that? They did, Your Honor, but we think what they were saying was that if you look at page, I think it's three of the record of the board's decision, in the third full paragraph, the board said that the statute under which the respondent was convicted is divisible, thus we apply the modified categorical approach. Their next sentence was that the record of conviction establishes the respondent was convicted under the statutory provision that prohibits, and then they cite A5A1. I see a problem there. Maybe we can pause here for a minute. Because it said the statute is divisible, therefore we apply the modified categorical approach, which is precisely what Mr. Griffin says it should not have done. You don't apply the modified categorical approach to the statute of conviction or the section of conviction to determine whether this is morally turpitude. You apply the categorical approach. So you can't go down there deep into the record and make all the statements that the BIA made about this being a crime against society and this is terrible. Nobody questions that, but the Supreme Court has said, look, this is the approach that you're supposed to take. I agree generally, Your Honor. The general approach is to apply the categorical approach. If the statute is divisible, however, then the agency can apply the modified categorical approach solely for the purpose of determining. So the statute is divisible if it comprises alternative elements, if it comprises multiple alternative versions of the crime. Here, what we think the Board did was that the entire statute, 18 U.S.C. 1030, was divisible, and then it looked to which subsection was the alternative version of the crime underlying his conviction, and it looked at the judgment and saw that that was A5-A1. That was my initial question, Mr. Griffin, because that's my understanding. One can say that BIA used 1030 as a whole and the specific subsection of conviction almost fungibly, whether it could do so or not, and it found the statute as a whole was divisible. But when it looked, then it went to the subsection and quoted that line. There's some confusion there, I think. There have been better decisions, written by the Board. Didn't it intend to say that the statute as a whole is divisible, but that the subsection under which he was convicted was not going to be divided, is not divisible? They did not say so explicitly, but that's our reading. That's what I thought they were doing.  Once they pinned down what it was he was convicted of, while the statute was that wide, and for the record, I'm going a foot wide, now they take six inches. So that's the part we're under, and that's not divisible, and that's a crime of moral turpitude. Right. I think essentially that the Board essentially applied the categorical approach to the subsection, which I think is what... See, I have to tell you, I was startled at the thought that 41 months was not moral... You know, we've got a 41-month stretch, and, you know, we sit here, that doesn't seem long, but if you're doing the time, it's a long time. As sometimes people tell me, sentences are short. I ask, what were you doing four years ago? Think of the time in between. But anyway, I mean, that's what I thought they were doing, that this was being treated as a serious crime. I think that is your right, Your Honor. In fact, as part of the analysis, doesn't the Board have to focus on the least culpable crime that could be committed under the statute that it was reviewing? That is correct, Your Honor. And your friend across the aisle, and his brief, had two very interesting hypotheticals which he hypothesizes two different ways in which the statute can be violated in a non... You used the word... And you haven't addressed them in your papers. Maybe you could do it now. Well, Your Honor, we don't think that the conduct described in those statutes would rise to the level covered by the statute. Wait a second. Do you know what you just said? The conduct in the statute doesn't rise to the level... I'm sorry, the conduct in the hypotheticals we don't think would rise to the level covered by the criminal statute. I apologize, Your Honor. And his... He talked about an office prank. His examples are... That gave rise to damages in excess of $5,000. His examples are pranks, and they kind of throw in the $5,000 amount, but there's no... In the cases that have applied, this 1030A5A1, I was unable to find any case where prank-like behavior was... That's not what he's saying, though. He's giving a hypothetical, which is not based on real fact, and suggesting, look, under these circumstances, you cannot find that this was morally turpitude. Remember the phrase, the least culpable conduct. Right, but we also think it has to be conduct that would be covered by the statute, and we don't think that the prank-like behavior that he conveyed would have the requisite intent to cause damage. Well, whether... It's at least... There are at least plausible scenarios, I would suggest. We... I mean, it depends on how broadly you interpret plausible, but we think that they... We do not think that those sort of behaviors would be prosecuted under the statute. Criminally. You know, I was struck by the Supreme Court's statement that there's a reason for all these approaches, the modified, the categorical, the least culpable conduct, and those phrases have significance in the statement of the Supreme Court. Recently, the shams, which is... The Supreme Court is trying to make sure that there is uniformity across the country in how judges look at these various statutes and determine what is morally heinous or turpitudinous or not. And so that you look... They apply these very specific analytical tools to provide for uniformity. And it would seem to me that in this case, at least according to Mr. Griffin, the BIA went off its mark and applied its own sentiments because it was perhaps horrified at what occurred in this case, but used the wrong analytical tools. Well, one thing to keep in mind, Your Honor, is that the... In the Discamp and Moncrief and this Court's recent decision in Rojas, they were all applying... They were all in a situation where the Court owed no deference to the Board's determination. It was comparing whether something under the Armed Criminal Career Act had a match in the INA. And so it was just kind of seeing whether the elements were similarly matched. Here, because it's a crime involving moral turpitude, that is something the Court has traditionally given deference to the Board in determining what constitutes a crime involving moral turpitude. You agree with Mr. Griffin, at least insofar as the section or statute of conviction is indivisible? We believe that the subsection A5A1... Is indivisible. We believe that the Board found it was indivisible. All right. And therefore, the correct approach is the categorical approach. At that point, Your Honor. I would agree up to there. Up to there, yes, Your Honor. However, as kind of an initial point, we don't think the Court need address the crime involving moral turpitude issue because there are no substantial collateral consequences that would arise. Mr. Makwana concedes... I thought there were. He's going to be removed because he concedes removability. So as soon as he gets out of prison, he has to go. But he may want to come back. That's correct, Your Honor. And if there's a finding of moral turpitude in his conduct, he cannot come back. That's not necessarily... Except under very limited circumstances. Well, and even that's not necessarily so, Your Honor. First, he also mentioned something about voluntary departure, how if the crime involving moral turpitude or ground of removability is taken away, he would be eligible to apply for voluntary departure. We disagree with that. The Board found he was ineligible for voluntary departure because he lacked good moral character, which is one of the things required to establish eligibility for that relief. An alien who has been incarcerated for more than 180 days necessarily cannot establish good moral character under 8 U.S.C. 1101 F7. So even if the crime involving moral turpitude conviction went away, he would still be ineligible for voluntary departure and thus subject to removal. So you're saying we don't have jurisdiction to consider that issue? Basically, it's kind of a moot issue. It doesn't matter. That was exactly where I was going. If there are collateral consequences, such as a failure, an inability to return, I'm not sure at all that the issue is moot. Well, let me explain, Your Honor, because there are several grounds why we think it is moot. First off, just some general background, there are two relevant grounds, two relevant bars to return that could arise in these proceedings. Each of the three grounds of removability, including the two he concedes, brings forth a 10-year bar on returning once you're removed. Any alien removed is subject to a 10-year bar on returning that is unwaivable, absent the consent of the Attorney General. An alien who has been ordered removed based on having been convicted of a crime involving moral turpitude is also forever inadmissible. However, there's a couple of key things to keep in mind there. They're inadmissible, so let me take a step back. So, Mr. Makwana will be ineligible to return for at least 10 years. Let's say it's 2025 and he decides he wants to return. He will then have to seek admission to the United States. At that point, he will bear the burden of proving that he has never been convicted of or committed acts constituting a crime involving moral turpitude. Here, it's the Department of Homeland Security that bore the burden of establishing a crime involving moral turpitude conviction. When he seeks admission, he will have the burden of showing that he has never committed acts which constitute a crime involving moral turpitude. They're asking, we're being asked to make just such a finding. I mean, to say what... That's, yes, Your Honor, but... There would be. Well, he's essentially asking, we believe he's essentially asking for... Well, the issue's not moved. We believe he's asking for an advisory opinion because the other thing to consider is when he seeks admission, say it's 2025, he will have to show he's admissible under the law that's in effect at that time. So if there's any congressional change in the statute up until that time, or if there's any differing interpretation of how a crime involving moral turpitude is interpreted by this court or the court where he seeks admission... We have to assume that the law in place will be in place until Congress changes it, don't we? Yes, Your Honor, but he's... Maybe it will be in place in 2025? But the point of the matter is that even if this court finds that it is not a crime involving moral turpitude, we're not sure that that would control when he seeks admission in 2025 or 2030. Well, I don't think that is our problem today. Right, which is why you need not address it. Well, let me ask you this. If we ignore the fact that McWana left a virus on this particular computer that caused substantial damage, and just ignore that for a moment, can you conclude on the basis of the words of the statute alone that this is morally turpitude in its conduct? We believe that that's what the board did, Your Honor. They said that after looking at the two definitions of a protected computer, they said that given the nature of the affected computer, so including all of the computers defined in the statute, that the crime threatened significant societal harm, and they also said that it included the necessary knowing conduct and a specific intent to cause damage. But we don't look at the conduct under the categorical approach, do we? You can look at the conduct described by the statute, but not to the... By the statute, but not his conduct. Well, right, but we think that the least culpable conduct covered by the statute would constitute a crime involving moral turpitude. Covered by the statute. Yes. Which is really what we have to decide. Right, that is correct. There's a case that was decided by Judge Arenas. It's the Carlson case. Are you familiar with it? I'm not, Your Honor. Well, I'll use it as a hypothetical. If we consider a spammer who sent thousands of spam emails to an email address to the point that individuals who were spammed could not look at their own emails and the cost to cure was over $5,000, and the person only transmitted the emails that intentionally caused that damage, would that be a crime involving moral turpitude? You know, I... Spam emails to various addresses and they could not open their own email to cure the problem in excess of $5,000. Well, my first question would be whether that spam email constitutes a program information code or command, and I'm not savvy enough with computers to know whether a spam email would constitute one of those four things as required by the statute. All right, fair enough. I will say, though, Your Honor, we... How about the people that call me every night to vote? I believe your elected representatives gave an exemption for political calls, Your Honor. Going back to... I just want to really, in my final seconds... He will... Regarding why this court need not address it, he is subject to a 10-year bar at minimum, and any time in the future he was eligible to apply for a waiver from either the consulate or the government and seek readmission, and we don't think that the... This is not a case where it's an aggravated felony conviction where he's forever barred from returning. He does have relatives who are U.S. citizens, doesn't he? He does, Your Honor. He has two children? Two children, so he would be able to apply. So he may, sometime down the road, want to come back if his children stay in this country to visit his children? Absolutely, and that's... So it sounds like he has a dog in the fight. Well, that's what a 212H waiver would cure, though, Your Honor. He could obtain a waiver under the statute that would waive his inadmissibility and he'd be permitted to return. Did he seek one or wasn't it denied already? The immigration judge and the board, they determined it would have done him no good at this point because they would not have waived the other two grounds of removability. All it could have waived is the crime involving wild turkeys. This is a case where he sits there every day in prison and he says, why did I do that? It's likely so, Your Honor. You know that? And we all sometimes have those thoughts. He has it every minute of every day. Why did I do this? Likely so, Your Honor. For these reasons, Your Honors, we believe that the court should deny the petition for review. Thank you, Mr. Marcelli. Thank you. Mr. Griffin? Yeah, just a couple of points. If I may quickly just address Judge Greenberg's couple of his comments. The length of time, the concept of crime involving moral turpitude is this historic sort of very murky definition that goes to sort of the guts of morality that whether there's a big punishment for it or not or a statute against it or not, it hits you as morally turpitudinous. So the length of time specifically of sentence really doesn't affect whether it was morally turpitudinous or not. It's definitely the words of the statute. I think in terms of, I couldn't think the BIA could have been more disingenuous and I've done a lot of these cases to sort of say, oh, I don't know what section he was convicted under. Let me read the indictment. They read the indictment and then they find what it is. But it was already there. It was in the J&C. So why did they go to the indictment? So they could pick up that he was involved in a place that had to do with the stability of the housing markets. And then they said that causes significant societal harm. It was cheating. And then they used it against him. And to the credit of the immigration judge underneath, he didn't do that. The BIA took it and took it another step further and that's why we're here. In terms of what does moral turpitude mean? Or is that really the issue before us? I mean, that, yes, the preceding three paragraphs had Fannie Mae mention things of that nature. It wasn't an error in that respect, harmless error. I mean, that's not really the issue before us, is it? I think they spoiled, they could have come to a decision which would have been wrong, I think, because the statute is morally neutral. Without going, but once they went there, they used it against him. It just cites the words of the statute of the subject. It said significant societal harm because it affects the stability of the US housing markets. And no one's supposed to know that because you're supposed to use the categorical approach and it was right there. It was right there with the statute. Now, in terms of the moral turpitude, moral turpitude has sort of been defined as things where maybe the mob in the village would come with their torchlights to your house and basically kick you out. Or on a more benign level, maybe retired Mr. Jones and retired Mr. Smith meet for coffee every morning and discuss the local paper. And then there's something that hits your gut. It's stealing, it's fraud, it's extortion, and it upsets you and it's child abuse. But if our two retired gentlemen are having coffee  he just did something that impaired the integrity of some information. I mean, it doesn't hit your guts. It's not on a level of something morally turpitudinous. It has the word damage in it, but if you look at the word damage, it's not destruction of property. It's not malicious damage. What about the deference we're supposed to give the EIA in its determination of what morally turpitudinous conduct is? I agree that their Chevron deference is due to the board, but here they weren't interpreting any specific term and saying that's morally turpitudinous because it's a term that lights up moral turpitude when you read it. Their decision was driven by where he worked and what could have happened. I think my hypotheticals pretty much show that the least culpable conduct, a lot of people could get hurt, get imprisoned for this, get deported for this. If this kind of decisions keep happening, I mean, another sort of simple hypothetical that doesn't go to the gut of moral turpitude, you could have a State Department computer or a Department of Defense computer that has the speeches of Obama and former presidents about starting a war, and you have the Syria, Mr. Obama's, President Obama's recent speech about trying to get Congress to allow him to go to invade Syria. Some sort of progressive... I don't think he wanted to invade Syria. He said he didn't want to invade Syria. Well, let's say some other speech, but you could have a progressive worker at one of these big government agencies that has manipulated the thing so that when Obama begins to speak, Martin Luther King's 1967 speech about the triple threats of racism, militarism, and materialism comes up where Obama's talking. Now, is that morally turpitudinous? It causes $5,000 damage. It sure messed up the computer. But there was nothing there against the goodness of society. There's nothing that reflects a corrupt mind, vile base behavior that's depraved and despicable, and those are all the words that have always been used by this court and the Board of Immigration Appeals to describe something where someone has to be ejected from our community because they're a danger. Okay, anything else? Thank you, Your Honor. Very good, thank you very much. Appreciate your arguments very much. We'll take the case under advisement.